This is our first case of the afternoon, 413-0863, N. Ray Matthew P. for the appellant, Ms. Bullard for the appellee, Ms. Brooks. You may proceed. May it please the court, counsel, I am Jackie Bullard and I represent the minor respondent in this case. Lawyers fight. They fight hard and they should fight hard. Because we know that that's how the truth is supposed to emerge in an adversarial system that we work under. When lawyers don't fight fair, the entire system breaks down. When lawyers elevate the desire to win over their responsibilities as attorneys, they generally make a mess of things and that's what occurred in this case. Prior to trial in this case, the prosecuting attorney had what was at best a potential conflict of interest. He had represented the minor in a proceeding a year earlier in an unrelated matter that involved similar allegations but a different individual. Prior to trial, he informed the trial court and defense counsel about this prior relationship but represented that he had no intention of introducing that evidence because it wasn't relevant to the current prosecution. If we had stopped at that point, there would be no problem. The Supreme Court in People v. Gerald set forth the standard for per se conflicts of interest when prosecutors are involved in the prosecution of a client that they formerly defended. The rule under Gerald and under the Rules of Professional Responsibility absolutely prohibit a prosecutor from participating in the prosecution of an individual that he defended in the same matter. This case doesn't involve the same matter. It also prohibits prosecutors from participating in a case if, by virtue of their prior representation, they have acquired knowledge of the facts upon which the prosecution is predicated or which are closely interwoven therewith. Significantly, Gerald doesn't require that the information, the knowledge that they bring from this prior representation involves confidential information. Gerald talks about knowledge that the attorney gains through the prior representation. This is consistent with Professional Rules of Responsibility that prohibit attorneys from using information from prior representation against a client, even when that information is not confidential if it's used to the former client's detriment. Mid-trial, everything changed. To counsel's surprise, the prosecutor in this case started to elicit testimony about the subject matter of the prior representation. The State, in its brief, talks about the fact that perhaps the State's attorney was surprised by the complainant's testimony that something like this had happened before. That argument is not well taken. If that were indeed the case, if the prosecutor, consistent with his representations pre-trial, intended not to use this information, his response at this point would have been, I'm sorry, Your Honor, I didn't expect that answer to come forward. But instead, what this prosecutor did thereafter is very purposefully elicit a testimony about the subject of the prior representation. Defense counsel initially objected, ending with, Your Honor, I don't have any idea where this is coming from. Rather than apologizing, the prosecutor in this case was ready with a theory of admissibility. When the trial court overruled defense counsel's objection, the prosecutor continued, Why didn't you want to tell Nathan and Zach, which were the two boys that she encountered immediately after the alleged incident, why didn't you want to tell them what happened? And then responded, Stuff had happened before with Matt and another girl. She got bullied heavily. Now at this point, we would expect that there would be some testimony that would follow about delayed reporting. Because that is the purported reason for allowing this information in. That she had heard about this other incident, that she was afraid of being bullied. And the only legitimate reason for getting that information in is to explain the fact that there was some issue with delayed reporting. The problem in this case, there wasn't a problem with delayed reporting. She tells Nathan and Zach that Matthew tried to do something to her and shortly thereafter, makes a very explicit statement to an ex-boyfriend of hers where she tells him Matt had done stuff to me and I did not want to. He had put his hand down my pants and I told him I wanted to go home. So there is no issue with trying to explain a lack of an immediate outcry because we have this in this case. On redirect, or on cross-examination, defense counsel tries to mitigate the damage that has come in. Which is essentially, Matthew has done this before. By trying to elicit testimony that there was a recantation in the case. He ultimately was unsuccessful because Nathan responded that she didn't know anything about the recantation. At this point, we would expect the matter to be dropped, but instead the prosecutor again revisits the issue during redirect. Asking her if she was aware of the fallout that occurred with the other girl. Again, if we are talking about the issue of delayed reporting, that is a legitimate inquiry. But then he goes further. He then says, and what fallout did you see? I guess, what was the rumor you heard? The rumor, of course, is the only way to get the information in because NN wasn't privy to actually what had happened between Matthew and the other girl. At this point, defense counsel objects. The trial court again overrules the objection based on state of mind, which in this case is shorthand for reasons for delayed reporting. And the state's attorney continues. What was the rumor that you heard had happened? I heard that she was raped by who? Matthew. That's not enough. The prosecutor then does something absolutely extraordinary. He asks NN a question that is completely unrelated to the question of why she might have delayed reporting. And did rumor say how she had been raped? Counsel asks NN, try to elicit testimony about the specifics of the earlier representation. At this point, counsel again objects at the end and tries to make a record at the end of the examination. Wasn't there a question as to why she didn't tell the police about this? There was a question. The only delayed reporting issue in the case is she did not tell her mother for about a week afterwards. Why isn't that something which the state legitimately could seek to explain? I think that the state could ask the trial court to rule on that issue and legitimately explain it. But in this case, they would have had to have done it with a special prosecutor. Because the facts that were at the core of this impeaching testimony were at the core of Mr. Thompson's prior representation of Matthew. Well, that would be if it were a visible substance of evidence, perhaps. But the whole idea behind evidence received for limited purposes, we don't know. And we need not determine whether it was true. Since it's admitted only for the purpose of explaining what the witness did, namely she chose not to report it because, and indeed in this case it's even more clear, it's a rumor. I heard a rumor and because of that, I decided I wasn't going to report what had happened. By definition, when you hear a rumor, how is this to be considered as substance of evidence of guilt? And I think the flip side of that question is why is it that the prosecutor felt that he needed to get that information? To explain the delay. In this case, if he had raised the issue to begin with, if he had not essentially... What do you mean, if who had raised the issue? If the prosecutor at the beginning of the representation had said, we intend to introduce testimony about an incident, and I represented Matthew regarding this initial incident. At that point, that's the place to do this. In this case, the prosecutor said, I'm not bringing this information in because it's not relevant. I certainly would agree that if it goes back on retrial, that the state would have an opportunity to make the argument that the evidence is inadmissible, and give defense counsel an opportunity to make the argument why it's not. How did the representation of defense counsel affect in any way what this witness believed or heard, so that it caused the problem regarding her testimony as to her reasons for delay? Gerald tells us the confidential relationship between attorneys and clients matter. And it matters so much that when a prosecutor uses information that he learned during the course of an earlier... Give me an example of what the prosecutor learned from his having represented the minor respondent in this case that came into play regarding what the victim said by way of explaining her delay. The record is not perfectly laid out. Give me an example of anything. When NN testified, I heard Matthew raped the other girl. And that was the subject of the prosecutor's prior representation. And but for the prosecutor's prior representation, the witness wouldn't have said that? The witness might have said that, but the problem with the per se conflict of interest, when a prosecutor uses information that he learned, not confidential information, information... What information did he learn that he used to elicit that question and answer from the victim? That another girl in an earlier proceeding had made similar allegations against Matthew. But she said that's what she had heard? Yes. So how did the prosecutor, from his earlier defending Matthew, use any of that information? He elicited the testimony on more than one occasion. He elicited testimony that Matthew was involved in an incident with another girl. And we know from the record that that particular incident was the subject of the prior representation. And when defense counsel objected, that's the point where the prosecutor says, wait a minute, that doesn't have anything to do with my prior representation. But instead what he did is the prosecutor stood there silently. The reason... Well, if the prosecutor's content was so outrageous, why didn't the defense counsel move for mistrial? As an appellate attorney, I would have preferred that he use the word mistrial. But here's what he did. He had absolutely no idea that this information was coming in. It's clear from the reading of the transcript that, quite frankly, he's flabbergasted. I object. I don't know where this is coming from. He starts throwing all sorts of objections out. Then at the close of the state's case, he then further discusses the fact that... I didn't realize this was even going to come up or I would have filed a motion before. I don't know how. I guess I'll have to decide how I'm going to do it at the proper time. This testimony about past stuff, I didn't realize it was coming in. I don't think I was as clear as I should have been, Ms. Bullard. Let me go back and ask it this way. Had a different prosecutor been involved in this case? And had that different prosecutor, Prosecutor Z, ask the complaining witness all of the questions in exactly the same fashion that the prosecutor actively involved was present, would you make the same claim? If defense had had an opportunity to file a motion and eliminate before trial, which is what defense counsel said, if I had known this was coming in, I would have filed a motion. Where does that requirement come from? It comes from the requirement surrounding other crimes evidence, which does not... Other crimes evidence is offered substantively, Ms. Bullard. This wasn't offered substantively. Other crimes evidence is admitted for a variety of reasons. Substantively, as proof of guilt. Also to explain the course of an investigation. There are all sorts of things where the information is not... that doesn't come in substantively. And defense counsel still... this is incredibly prejudicial information. It is information that the same crime that Matthew's been accused of now... But then your argument is lack of discovery, which should have been forthcoming, having nothing to do with who was the prosecutor who asked the questions. That is certainly related to the second argument that we make on appeal. The notion that the prosecutor in this case misled the court and misled defense counsel by saying prior to trial this information isn't coming in. And then for the first time mid-trial in the midst of his direct examination of the complainant eliciting this testimony. So that is certainly one alternate grounds for relief. But the per se rule is important in this case. The per se rule is an extraordinary rule. It's not accepted by... I'm having trouble understanding how there could be any sense of an advantage taken, which is what the per se rule is designed to achieve, when the only questions have nothing to do with what the lawyer learned, but only dealt with what the victim heard or believed. And even using the term rumor, which of course would possess no substantive basis, where's the unfair advantage here? So what Gerald tells us about the per se rule is that it's not just about unfairness to the defendant. In fact, there are much larger issues that are served by the per se rule. The first is the notion that we shouldn't be putting honest practitioners in a position of having to choose between divided loyalties. In this case, Mr. Thompson's duty to Matthew due to the prior representation and his duty to the state as a prosecutor. And I think that's where we started in this case, when he initially shows up and says, I'm not going to use this information. So we've got an honest practitioner who's trying to do the right thing. What does that mean? He's not going to use any information he learned from his representation. Do we have any indication he used any information he learned from his representation? Your Honor, I think we're going to have to disagree on the fact that I would simply maintain that that testimony from MN that said Matthew was involved in this other incident, and we know that Mr. Thompson was the attorney in that other incident, is enough evidence to let us know that Mr. Thompson... That would be the case if Thompson told her. By the way, did you know that he was involved in this earlier incident? Perhaps that would be the argument. Is there any suggestion of that? There's not a suggestion of that, but that's not necessary in the per se conflict. By the same token, we don't know what conversation took place between the prosecutor. And again, what the per se rule takes us back to is it says a prosecutor can't prosecute a case if facts that are closely interwoven with the prior representation are involved in this case, and that's what happened. The per se rule is about protecting practitioners. It's about preventing intentional misconduct, which is what it feels like once we get to the middle of the case where he's introducing this evidence by surprise. The rule recognizes the likelihood that this information that an attorney receives from a prior representation has the ability to have a subtle and even unconscious effect on the conflicted attorney's performance in the current case. The rule also recognizes the unique role of prosecutors. Prosecutors have a duty to prosecute, and they have a duty to prosecute without interference. When they have a duty to another client, that duty interferes with that responsibility. Prosecutors also have a duty to ensure that the rights of the accused are honored, especially in delinquency proceedings. Perhaps most importantly, I think, in this case, there is the importance that the per se rule serves in terms of avoiding the appearance of impropriety, especially when the attorney who's involved is the elected state's attorney of a county who is the figurehead of that office, who makes charging decisions, who is the face of the state. But no motion was ever made for the state's attorney to recuse himself from the case. Your Honor, I think that would be problematic if the state's attorney, at the beginning of the proceedings, hadn't said, I'm not going to use the information from the prior representation. Trial counsel... Well, maybe I'm... There was a motion for substitution of judge, correct? Yes. And at the hearing where the motion for substitution occurred, the state's attorney also made... It came out that the state's attorney had previously represented the respondent. And the trial court says, well, I'm not going to hear that because I'm substituted out, but you should raise that motion to defense counsel with the new judge. But no motion was made. Actually, his response during that exchange was with Mr. Thompson. Mr. Thompson raised the issue of the conflict, not defense counsel. But Mr. Thompson said, my understanding, that none of that information would be admissible in evidence against Matthew. At that point, juvenile proceedings are informal. They don't necessarily... Okay, let me see there. Okay, now back to when I indicated to you earlier, no motion for mistrial was ever made. What happened was that defense counsel said that he didn't know this was going to come up and brought it to the court's attention. The court then says, well, I didn't consider it substantively. For whatever it's worth, it goes to why she... Her mental state is why she didn't report the incident. And then defense counsel said, with that, I'm okay. Let's proceed, or something to that effect. No, he didn't say he was okay. Well, did he say, with that, I am ready to proceed? That's what I get. Yes, knowing that his objections to this testimony had been overruled on more than one occasion, his position was, I'm going to proceed. But he didn't say, I'm moving for a mistrial. No, he did not move for a mistrial. But what In Re. Samantha V. tells us, which is the Supreme Court case, is the same waiver rules that apply in adult proceedings don't apply in juvenile proceedings. Samantha V. tells us, an objection alone in a delinquency proceeding is enough to preserve an issue for appeal. There doesn't have to be a post-trial motion. Again, would it have been preferable if defense counsel had used the word mistrial? Yes. But what was really clear when you read the transcripts in their entirety, is defense counsel was surprised he had his objection overruled on more than one occasion. Continuing to object wasn't going to get him any place at this point. I see my time has expired. We'll hear from you on rebuttal. Counsel? May it please the Court and counsel, my name is Anastasia Brooks, and I represent the people in this case. Although not addressed by the attorney for the respondent, I do want to briefly address the issue of subject matter jurisdiction because it's such a fundamental issue. The state's position is that the respondent is confusing the issues of jurisdiction of the subject matter, which means the class of cases to which this proceeding belongs, that is a delinquency proceeding, versus whether a particular cause is justiciable. For example, if the petitioner lacks a standing to sue, an issue which in Illinois is forfeitable. So therefore, the response brief could have read, well, that Officer Hindall, who signed the petition and presumably filed it, lacks standing to initiate a delinquency proceeding. Of course, that is forfeited because they didn't object below. Therefore, the claim is cast as an issue of subject matter jurisdiction. However, that is controlled by Lewis Arv's case. Lewis Arv's case, where the minor who was alleged to be delinquent was over 21 years old, however, subject matter jurisdiction still applied. And it should be the same result here if somehow the person who signed the petition were ineligible to file it. And to also refer to section 5-405, subsection 3, which authorized Officer Hindall, the juvenile officer, to refer the case to juvenile court. So that would also be a way of authorizing what he did in initiating the proceeding. With respect to conflict of interest, the allegation is that there is a per se conflict. Per se conflicts, according to Miller, refer to the attorney's status. And status here, in the context of a per se conflict for prosecutors who are former defense attorneys, Miller recognizes only one status, which is that the prosecutor had been the attorney for the other side in the same case. And the respondent relies heavily on this old case called Gerald. But this is distinguishable because in that case, the prior representation involved the subject matter of the indictment. The defendant was a treasurer who was alleged to have misplaced some funds. And he had consulted with an attorney about the same matters that were involved in what he was later charged with. And the Supreme Court of Illinois said that the matters were very closely interwoven, if indeed it were not the same identical matter. So there can be no claim that somehow Gerald is much broader than the scope of our rules of professional conduct, which is 1.9, dealing with former representation. Certainly, the respondent is reading Gerald much further than the facts that that case would permit. So therefore, it is not controlling on this court. Instead, the court's issue is controlling, and that deals with the issues of presumed confidences that were given in the prior representation. And the respondent has the burden under Schwartz of showing that under Rule 1.9a, this case is the same or substantially related matter. Well, it's obviously not the same matter, so the question then becomes whether it's substantially related enough, and there's a federal test dealing with that. And the respondent is not attempting to meet that burden, apparently. Comment 3 of Rule 1.9a says that there has to be a substantial risk that confidential factual information, of course there we have rumor, not facts, and that the next element of that is would, quote, materially advance the new client's position in the subsequent matter. Here the state is the new client of State's Attorney Thompson, who had been a former attorney for a respondent who a petition for an order of protection had been directed against as a result of unrelated facts. So here there is no confidential factual information that has been demonstrated, and that factual information, to the extent there had been any confidences imparted in the context of that, would not, quote, materially advance the state's position in this delinquency proceeding. And I'd just like to take a moment to comment on the opening of respondent's attorney accusing State's Attorney Thompson of unfairly elevating a desire to win. It's a pretty serious charges of unethical conduct that the defense is leveling against State's Attorney Thompson. I, of course, am here in a capacity as an attorney for the state, as a member of the Office of the State's Attorney's Appellate Prosecutor. I would like to remark also that I have not, in fact, spoken with State's Attorney Thompson about this particular case. I also felt it would not be appropriate for me to attempt to do so if it were to request any sort of confidential information, ascertain whether there had been, in fact, any confidential information learned in this prior representation. So my brief was written on the basis of the record. That is the only thing that I personally know about the case is what I read in the record. So arguments made about whether or not State's Attorney Thompson had, in fact, known certain things when asking questions such as, evidence of another crime. Of course, the rule, which is the pre-trial notice rule for evidence of other crimes, which is Rule of Evidence 404C, says the prosecutor has to intend to offer evidence under Rule 404B. Of course, pre-trial notice can also be excused on good cause shown, but the defense below never said, oh, well, we were entitled to pre-trial notice under Rule of Evidence 404C, and then State's attorney could have had a chance to try to excuse that or say that they didn't intend to elicit evidence under Rule 404B. The other issue is whether there was, in fact, any evidence of another crime. Here, it was a rumor that affected the victim's state of mind. And it's important to recognize under the Thing-A-Vold case that in order to admit evidence of another crime, the State would have the burden of first showing that a crime took place and that the respondent either committed it or participated in it. Well, when the subject of the testimony here is a rumor that affected the victim's state of mind, it seems unrealistic to put the State to the burden of proving that the crime took place and that respondent had committed it. Alex, I think that Ms. Bullard has misstated the issue here, and I think you might be getting to the same point. This is not other crimes evidence. Other crimes evidence is admitted for a limited purpose, but admitted substantively for that purpose. And the concern with regard to other crimes evidence is that it not be admitted for the purpose of showing a propensity of the defendant to commit crimes, but if we show it's admitted for absence of mistake, let's say, the jury may consider that evidence substantively, but just not as the instruction of the 314 of IPI would say, not to give it weight for anything other than this limited purpose. When we're talking about evidence admitted as an exception to the hearsay rule to explain one's behavior or conduct, it's admitted for no substantive effect of any kind. Exactly, Your Honor. It's not something, and Ms. Bullard is incorrect to suggest, that it's this limited evidence is something the jury may consider, or try to affect, may consider substantively at all. And to the extent that you might have been drifting in that area, I wanted to mention. I understand, Your Honor. The same thing applies. This is what she heard, rumors, whatever else. Not only is this not substantive, but it would be contrary to the purpose of why it's offered, for there to be any purpose to try to prove any of it as being true. It doesn't matter whether it's true. The truth of it is irrelevant. The only thing that matters is, did she believe it? And if so, how did she act upon it? Correct, Your Honor. The State's position is Rule 404 does not apply because it's not, in fact, evidence. Evidence would have to mean that it tends to prove or disprove the fact, which was whether the respondent had raped the other girl. That's not the fact that's at issue, and the reference to a rumor affecting the victim's state of mind did not either tend to prove that fact. So therefore, it is not evidence of another crime subject to Rule 404. So that's the State's position. What prompted the prosecutor to ask her to describe more fully about what she heard about, what the act or misbehavior was? I cannot answer that question, sorry, Your Honor. I think there was some cross-examination from the defense about the subject, so therefore, the prosecutor wanted to explore that a little bit further and redirect. That's what... Cross-examination about the delay, you say? About the subject matter of the other incident with the other girl. But the only... There's some bad behavior that she hears about by rumor. The girl who either reported that or had it happen to her was bullied and treated badly at school. So then she says, I didn't really want anybody to know about it because the same thing might happen to me. Right? Yes, Your Honor. Then what possible reason could there be for the prosecutor to go beyond that, whether to rehabilitate after cross-examination or not, to ask more about what may or may not have happened to that girl in terms of whatever the misbehavior was, whether it was an attempted rape or a grope or a fondling. Whatever it was, it was sexual in nature, allegedly, and it prompted bullying. To ask for the act to be described is nothing other than prejudice. I mean, it has absolutely no purpose. Because she doesn't say it was the extent of what happened to the other girl during the act that's what made me afraid. It was that that other girl, people found out about it, and at school they either made fun of her or bullied her or teased her or shunned her or whatever. Whatever it was. It seemed an attempt just to probe her knowledge of the awareness of what she heard and the rumor that she had heard. The defense had explored that on cross-examination, whether she knew that the complainant in the other case was the girlfriend of the victim and that she had recanted, et cetera. There was a probing by the defense. So the prosecutor was simply responding on a redirect, from what I can tell from the record, not knowing exactly what he was thinking at the time. But that's what it seems like from the record. So with respect to the prejudice, it does seem that in light of the trial court's minimal consideration of this, simply as to the victim's state of mind, there is not sufficient prejudice to overturn the judgment. Also, the state emphasizes that the defense had agreed to proceed. The claim here is that there was all sorts of objections. There were complaints thrown out, but no specific objection, I think, other than the first one, which was that somehow there was no substance or foundation for this because there hadn't been anything that resulted from the prior case. There was no allegation, however, that there was overly prejudicial versus the relevant prejudice under the balancing test. So for that reason, the defense's agreement to proceed in light of the trial court's comments about its minimal consideration of this evidence was, in fact, acquiescing and is not something that now can be raised on appeal under the invited error rule. So even though it's not actual evidence of other crimes, it is something that the victim said that could be at least potentially subject to balancing for prejudice and relevance. But in light of the defense's agreement to proceed, that's not something the defense can claim on appeal. So that is... Well, I just wanted to close with the comment that if the defense's claim is that Miller recognizes a per se rule of conflicts as extraordinary, well, it's extraordinary for a reason, and it should be limited to those extraordinary cases in which Miller recognized. And the only case that Miller recognized was that the defense attorney became the prosecutor in the exact same case. It doesn't have to be heavy involvement by that defense attorney who becomes the prosecutor, but it has to be the same case. And the defense does not cite any actual case, including Gerald, as one in which the representation involved a subject matter that became the indictment. So just to distinguish in summary, if Prosecutor Thompson had represented respondents  and filed a petition to adjudicate him delinquent, arising from the facts alleged by this other student, then that would be a situation where Gerald would apply. However, he did not become state's attorney until later, and the prior proceeding was closed even before the respondent committed this new crime against a different student. So therefore, there's nothing that the respondent could have told or consulted with his attorney, Thompson, back then prior to his later commission of the crime. So he couldn't have been consulting his attorney about something that didn't even happen yet. So for that reason, Miller and Gerald are not applicable. I'm happy to entertain any further questions. Thank you, Your Honors. Thank you. So I apologize, Your Honor, in Argument 3. My argument in Argument 3 is this is not a prior bad acts case. This is a prosecutorial misconduct case. But prior bad acts case law is rich with relevant information about how prejudicial that kind of information is. I think you're exactly right. The issue is to the extent and the scope of the need to explain the mental state of the victim to address the delay, assuming that's pertinent, and how far do you have to go on that. But that's another aspect of this. This is a bench trial. I think the law is pretty clear that the concerns about the misuse of this information are much greater in a jury trial. And as I recall from this record, it seemed like the trial judge was particularly attuned to how this evidence and the rumor evidence on the rest of it was admitted for this limited purpose of explaining the delay and only. Didn't the court indicate I'm going to be careful not to consider it beyond that? My response to that is twofold. The first is this was a case that hung on credibility. And this particular issue went directly to the credibility of the complainant. Only as to the delay. Why did you wait? Well, I waited because, as you said. A trial is lots of little pieces. And every little piece builds toward a conviction. And the trial court gave us a glimpse into its reasoning in this case. The trial court talked about when I first heard the complainant testify, and I heard the information about the text message or Facebook, and I thought the state had met its burden. And then the defense witnesses got up and they testified. And I had a doubt. Now at that point the court could have said I found those three kids absolutely unbelievable. But he didn't. He said the pendulum really swung for me there. So that gives us this notion of just how close this case is. And then it wasn't until the rebuttal witness. This is a case where the error goes directly to credibility. My second response to that is judges are human beings. Is what? Judges are human beings. I suppose that's true. And it is a common human experience that we hear things, we absorb knowledge that affect our perceptions as human beings. Even when we don't want them to. Even when we try our hardest to set them aside. If the fact that we always assume that judges are able to set that aside, there would just be a per se rule about bench trials. None of those evidentiary problems, none of those evidentiary issues in a bench trial are ever going to warrant reversal because judges never consider it improperly. But instead, you're correct, it is a harder burden for the defendant to bear in this case when you're talking about a judge who understands the law as opposed to the jury. But it is still this extraordinary issue. And, of course, following up on Justice Turner's point, it would have been entirely appropriate for a defense counsel to say, Judge, I understand the state is trying to explain the reason for delay, but what Mr. Thompson is getting into is unnecessary and exceeds any reasonable need, and I object to going beyond this point. But, again, we had none of that. I agree with you. I agree that trial counsel could have better preserved this issue. And, again, that takes us then on to... Or assisted the court in saying, Yeah, you know, I think I've heard enough of this point, counsel. Let's go on to something else. In some sense, I think the trial court did that. So at the end of the testimony, defense counsel again revisits the issue and says, I didn't realize this was coming in. Mr. Thompson was the attorney, again, a little bit flabbergasted. And so what the trial court does then, the state's attorney stands mute, what the trial court does is the trial court really kind of interjects at that point and says, Listen, I'm not considering this substantively. So I think in terms of trying to mitigate the notion that what had happened here was particularly damaging, I think defense counsel has to take the trial court's representation at that point of what the trial court means. Yes, trial counsel could have preserved this issue better. Again, when it comes to the conflict of interest issues, there's no need to resort to the plain error rule. A per se conflict can be raised for the first time and it's a reversal. The actual conflict of interest that's contained in my brief has a prejudice discussion. The issue of plain error does apply, though, to the third argument, the prosecutorial misconduct argument. The fact that if defense counsel's objections weren't enough, this is a closely balanced case. And this is the kind of conduct that prosecutors shouldn't engage in. Prosecutors shouldn't be able to say before trial, I'm not using this evidence, and then with no warning at all spring that information in mid-trial. There's no argument that prosecutors can't use this type of information. But if they're going to use it, they're going to have to use it fairly. Thank you, counsel. We'll take the matter under advisement. Recess until the readiness of the next case. Thank you.